UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY,<br><br>　　　Plaintiff/Counter-Defendant,<br><br>v.<br><br>ROHRSCHEIB SONS CAISSONS, INC.,<br><br>　　　Defendant/Counter-Plaintiff. | Case No. 20-13316<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING
PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS
COUNTERCLAIM [17]**

In 2016, General Motors, LLC contracted with the Walbridge Aldinger Company to build a parking structure in Warren, Michigan. Walbridge's insurer on the project was Indian Harbor Insurance Company. Their insurance policy provided that Indian Harbor would indemnify Walbridge for losses resulting from defective work by Wallbridge's subcontractors. It also authorized Indian Harbor to bring suit as Walbridge's subrogee.

In November 2016, Walbridge subcontracted with Rohrscheib Sons Caisson, Inc. to install machine-drilled piers that were necessary for construction of the parking structure. Rohrscheib completed its work in February 2017.

A few months later, Walbridge informed Rohrscheib that two of the piers it had constructed were allegedly defective. It later informed Rohrscheib that there were many other defects with its work, severely disrupting construction. Rohrscheib

maintains that its work was not defective, and that if anyone was negligent, it was Walbridge.

Pursuant to the insurance policy, Indian Harbor allegedly paid over 10 million dollars to repair the defective work. It then sued Rohrscheib, as Walbridge's subrogee, seeking to recover the payments it made to remediate and complete Rohrscheib's work under the subcontract. Indian Harbor specifically alleged that Rohrscheib breached its subcontract with Walbridge (Count I) and breached express and implied warranties made to Walbridge (Count II). Rohrscheib counterclaimed, alleging that it was entitled to contribution and common law indemnification.

Indian Harbor has now filed a motion to dismiss Rohrscheib's counterclaims for failure to state a claim under Rule 12(b)(6). For the reasons given below, the Court GRANTS Indian Harbor's motion, dismissing both of Rohrscheib's claims.

## I. Background

Because Indian Harbor seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the factual allegations in Rohrscheib's counter-complaint as true and draws reasonable inferences from those allegations in Rohrscheib's favor. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

### A.

On August 8, 2016, General Motors, LLC contracted with Walbridge to build a parking structure at 30001 Van Dyke in Warren, Michigan. (ECF No. 6, PageID.64.)

Shortly thereafter, Walbridge entered into a Subcontractor Default Insurance Policy with Indian Harbor Insurance Company. (*Id.*; *see also* ECF No. 9-1, PageID.168.) The insurance policy provided that Indian Harbor would "indemnify . . . Walbridge for loss resulting from a Default of Performance by [Walbridge's] subcontractor[s]" working on the project. (ECF No. 6, PageID.64.) The insurance policy also authorized Indian Harbor to bring suit as Walbridge's subrogee, giving Indian Harbor the right to seek recovery of money it might pay out under the policy. (*See id.* at PageID.69.)

In November 2016, Walbridge subcontracted with Rohrscheib to install "caissons," i.e., machine-drilled piers, necessary for construction of the parking structure. (ECF No. 9, PageID.157; *see also* ECF No. 6-1.) Rohrscheib completed its work in February 2017. (ECF No. 9, PageID.158.)

In June 2017, however, Walbridge informed Rohrscheib that one of its caissons had settled approximately nine inches, and that another had settled about three inches. (*Id.*) Indian Harbor further alleges defects in 86 caissons, which resulted in work stoppages and required portions of the parking structure to be disassembled and repaired. (ECF No. 6, PageID.67.)

From Rohrscheib's perspective, its work was not defective. (ECF No. 9, PageID.158.) Instead, it says that "[a]ny settlement and/or defects in the caissons was due to differing site conditions, artesian groundwater, the unknown presence of methane gas, and/or . . . failure [by Walbridge] to provide an accurate report and description of the groundwater conditions throughout the site—not due to a breach

3

on the part of Rohrscheib." (*Id.*) Rohrscheib specifically points to the scope of work in the subcontract, which excludes "[c]ost associated with unsuitable belling conditions, artesian water conditions, and gases within the drill pier." (ECF No. 9, PageID.157; ECF No. 6-1, PageID.102.) In short, Rohrscheib believes that Walbridge is ultimately responsible for any alleged defects related to its work. (ECF No. 9, PageID.161–162.)

Pursuant to the insurance policy, Indian Harbor paid over 10 million dollars to repair the damage caused by the defective caissons. (ECF No. 6, PageID.70.)

**B.**

Indian Harbor, as Walbridge's subrogee, then filed this lawsuit against Rohrscheib. It seeks to recover "all payments" it made to complete Rohrscheib's work and to remediate Rohrscheib's defective work. (ECF No. 6, PageID.69–70.) Specifically, Indian Harbor's amended complaint includes two breach-of-contract claims: that Rohrscheib breached its subcontract with Walbridge and breached express and implied warranties made to Walbridge. (ECF No. 6, PageID.67–73.)

Rohrscheib counterclaimed, alleging that, to the extent it is responsible for any reimbursement, it is entitled to contribution under Michigan's Joint Tortfeasor Contribution Act and common law indemnification. (ECF No. 9, PageID.162–164.) Rohrscheib also filed, but then voluntarily dismissed, a third-party complaint against Walbridge. (ECF Nos. 10, 18.)

Indian Harbor's motion to dismiss Rohrscheib's counterclaims for failure to state a claim under Rule 12(b)(6) is now before the Court. (ECF No. 17.) The parties'

4

positions are briefed adequately and the motions can be decided without further argument. *See* E.D. Mich. LR 7.1(f).

## II. Legal Standard

When a defendant or, here, a counter-defendant, moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[ ] the court to draw the reasonable inference that the defendant is liable[.]" *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility" that a defendant is liable, it is not a "probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff (or counter-plaintiff) has presented enough factual matter to "nudg[e]" his claim "across the line from conceivable to plausible" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

## III. Analysis

Indian Harbor argues that several defects doom Rohrscheib's two counterclaims. Rohrscheib disagrees. The Court considers the two claims in turn.

### A. Contribution (Count I)

Count I is a claim for contribution under the Joint Tortfeasors Contribution Act. *See* Mich. Comp. Law § 600.2925a(1).

5

That statute provides that when two or more persons "become jointly or severally liable in tort for the same injury to . . . property . . . there is a right of contribution among them even though judgment has not been recovered against all or any of them." *Id.* "The right to contribution only lies between parties sharing a common tort liability."[1] *Id.*; *see also Downie v. Kent Prod., Inc.*, 362 N.W.2d 605, 615 (Mich. 1984), amended, 367 N.W.2d 831 (Mich. 1985). A party claiming contribution under the act "must show (1) a 'joint liability' among the parties, and (2) payment by one party of a disproportionate share of the liability." *In re Air Crash Disaster*, 86 F.3d 498, 548 (6th Cir. 1996) (internal quotation marks omitted).

Rohrscheib claims that "[d]ue to the negligence of Walbridge . . . Rohrscheib is entitled to recover from Walbridge, a proportionate share for all damages that Indian Harbor may recover. Indian Harbor, as the alleged subrogee of Walbridge, steps into the shoes of Walbridge." (ECF No. 9, PageID.163.) In other words, Rohrscheib seeks to hold Indian Harbor liable for Walbridge's alleged negligence, or, at the very least, it seeks a set-off from any judgment that might be recovered against it. Rohrscheib further clarifies that the heart of this action is "negligence, products liability, or some other tort." (ECF No. 19, PageID.243.)

---

[1] In its response, Rohrscheib relies on *Sziber v. Stout* for the assertion that "[u]nder Michigan law, the right to contribution is substantive in nature and independent of the underlying suit, which gave rise to the contribution claim." *See* 358 N.W.2d 330, 334 (1984). It apparently seeks to argue that a contribution claim is appropriate even in a contract action. But even assuming this interpretation of *Sziber* is correct, that case interpreted Michigan's pre-1974 contribution statute, and Rohrscheib does not explain its continued relevance in light of more recent cases such as *In re Air Crash Disaster*, 86 F.3d 498 (6th Cir. 1996).

6

Even assuming that a subrogee can be held liable for its subrogor's torts, Rohrscheib's contribution claim fails because it has not adequately pled a tort, let alone joint liability for a tort. Under Michigan law, a defendant acting pursuant to a contract is liable in tort only if he "owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations." *Ram Int'l., Inc. v. ADT Sec. Serv., Inc.*, 555 F. App'x 493, 497 (6th Cir. 2014) (quoting *Fultz v. Union-Com. Assocs.*, 683 N.W.2d 587, 592 (Mich. 2004)); *see also Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.*, 559 N.W.2d 647, 658 (Mich. 1997) ("[T]he threshold inquiry is whether the plaintiff alleges a violation of a legal duty separate and distinct from the contractual obligation."). "[I]f a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *Hart v. Ludwig*, 79 N.W.2d 895, 898 (Mich. 1956) (internal citation omitted).

So, for a tort action to lie here, Rohrscheib must show that there is a legal duty separate and distinct from the subcontract between it and Walbridge. It cannot do so.

Rohrscheib argues that the separate and distinct duties it owed to Walbridge were to perform "in a workmanlike manner" and "provide [c]aissons that are free from defect." (ECF No. 19, PageID.243–244.) But these duties are explicit in the contract: "The Work shall be performed by Subcontractor in good and workmanlike manner[,]" and "Subcontractor guarantees that the Work shall be free from defect." (ECF No. 6-1, PageID.75, 78.)

Nevertheless, Rohrscheib cites to two cases to support its contention that its duty to perform in a workmanlike manner and to provide caissons free of defect are

7

separate and distinct from the contract: *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553 (Mich. 2011), and *Nash v. Sears, Roebuck & Co.*, 174 N.W.2d 818 (Mich. 1970). Neither case supports Rohrscheib's position.

Rohrscheib first claims "that the defendant [in *Loweke*] owed the plaintiff a common-law duty to use ordinary care and the common-law duty, was imposed by law, and separate and distinct from the defendant's contractual obligations." (ECF No. 19, PageID.241–242.) But *Loweke* said no such thing. Instead, *Loweke* sought to correct a misapplication of the Michigan Supreme Court's previous caselaw that "ha[d] been misconstrued to, in essence, establish a form of tort immunity that bars negligence claims raised by a noncontracting third party." *Loweke*, 809 N.W.2d at 555. *Loweke* clarified that a contract cannot extinguish common law tort duties owed to noncontracting parties, which is not at issue here. *See id.* But, as between contracting parties, a party bringing a tort claim still must "allege[] a violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Const. Corp.*, 559 N.W.2d at 658. And that is just the situation here: Wallbridge and Rohrscheib contracted for the caissons (and other work), and Indian Harbor now stands in Wallbridge's shoes for purposes of the subcontract.

Similarly, Rohrscheib's reliance on *Nash* is misplaced. Rohrscheib claims that *Nash* stands for the proposition that the "duty to perform in a workmanlike manner is a duty that is separate and distinct from any contractual duty and is sounded in tort." But *Nash* says just the opposite: "there is implied in every *contract* for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike

8

manner." 174 N.W.2d at 821 (internal quotation omitted) (emphasis added). So the implied duty in *Nash* arose from contract law, not tort law. And there is no need to imply a contractual duty here because the subcontract explicitly requires that work be performed in a workmanlike manner.

So Rohrscheib has not adequately shown how any duties it owed Walbridge were "separate and distinct" from the duties laid out in their subcontract, let alone that there was joint tort liability between it and Walbridge as required by the Joint Tortfeasors Contribution Act. As Indian Harbor correctly points out, there was no separate and distinct duty here because "[t]he entire purpose of the negotiated contract with Rohrscheib was to provide [c]aissons in a workmanlike manner and which were free from defects." (ECF No. 20, PageID.264–265.)

Before turning to Count II, the Court notes that the parties' spent pages debating whether Indian Harbor's amended complaint should properly be read as asserting contract or tort claims. But because the subcontract controls the relationship between the parties under *Hart*, 79 N.W.2d 895, it does not matter if Indian Harbor's claims are tort in substance. So it is not necessary to resolve the proper interpretation of Indian Harbor's complaint.

Count I will be dismissed.

### B. Common Law Indemnification (Count II)

Count II is a claim for common law indemnification.

Generally, "indemnification is an equitable doctrine that shifts the entire burden of judgment from one tortfeasor who has been compelled to pay it, to another

9

whose active negligence is the primary cause of the harm." *St. Luke's Hosp. v. Giertz*, 581 N.W.2d 665, 668 (Mich. 1998). "[A] party who is guilty of only passive negligence or vicarious liability may recover indemnity from the person who is actively negligent." *Id.* Thus, the party seeking indemnification at common law "must prove freedom from personal fault." *Botsford Continuing Care Corp. v. Intelistaf Healthcare, Inc.*, 807 N.W.2d 354, 361 (Mich. Ct. App. 2011).

"Whether a party is 'passively' (vicariously) liable or 'actively' liable for purposes of determining the availability of common-law indemnity is to be determined from the primary plaintiff's complaint." *Parliament Constr. Co. v. Beer Precast Concrete Ltd.*, 319 N.W.2d 374 (Mich. Ct. App. 1982). If the primary plaintiff's complaint contains any allegations that the party seeking indemnification was actively negligent, and not merely allegations of passive negligence, common law indemnification is not available. *Oberle v. Hawthorne Metal Prod. Co.*, 480 N.W.2d 330 (Mich. Ct. App. 1991).

Rohrscheib's counterclaim alleges that its liability "if any, was of a derivative or secondary nature and the liability of . . . Walbridge was of a primary character, thus giving rise to a duty on the part of . . . Walbridge to . . . indemnify . . . Rohrscheib [for] any and all losses sustained herein." (ECF No. 9, PageID.164.) And, adds Rohrscheib, "Indian Harbor, as the alleged subrogee of Walbridge, steps into the shoes of Walbridge." In other words, Rohrscheib seeks to hold Indian Harbor liable for Walbridge's "primary" negligence because Rohrscheib itself was, at most, passively negligent.

10

Rohrscheib's claim fails for two reasons.

First, as already explained, neither party can bring a tort claim against the other because the relationship between Rohrscheib and Walbridge/Indian Harbor is defined by the subcontract. So it is not possible for this Court to "shift[] the entire burden of judgment from one tortfeasor who has been compelled to pay it, to another whose active negligence is the primary cause of the harm." *See St. Luke's Hosp.*, 581 N.W.2d at 668. Simply put, there are no tortfeasors here.

Second, even if a tort claim were possible here, Wallbridge is not a party to this suit, and so the posture of this case does not lend itself to common-law indemnification. Typically, there are three parties. *Botsford* is illustrative. There, a nursing home patient, the "primary plaintiff," sued her nursing home for negligence after she fell. *See* 807 N.W.2d at 362. The nursing home then turned around and sued the nurses' staffing agency for indemnification arguing that the nurses were actively liable, and it was only passively liable. *Id.* The court looked to the patient's complaint to determine if the nursing home had been actively negligent. *See id.* Here, unlike Botsford, there are only two parties and there is no "primary plaintiff."

Resisting this conclusion, Rohrscheib suggests that its own counterclaim is the "primary plaintiff's complaint." In particular, Rohrscheib claims that it "properly alleged that Indian Harbor's subrogor was actively negligent and any negligence on the part of Rohrscheib, which was denied, was derivative or secondary in nature." (ECF No. 19, PageID.246.) But that cannot be. If the party seeking indemnification

11

can satisfy the "purely passive" requirement through its own pleading, the "primary plaintiff" requirement would be nullified.

Rohrscheib makes one final attempt to save this claim. It argues that dismissal at the motion to dismiss stage is improper because "[w]hether a party was free from active negligence in an underlying case and thus entitled to common law indemnification is generally a question of fact for the jury." (ECF No. 19, PageID.246) (quoting *Botsford*, 807 N.W.2d at 360). While that is true, it is only the case when the party seeking indemnification has successfully pled it in the first instance. Rohrscheib must first cross the hurdle imposed by in *Twombly*, 550 U.S. at 544, and *Iqbal*, 556 U.S. at 662. For the reasons stated above, it cannot.

The Court concludes by noting that Rohrscheib remains free to raise the substance of its counterclaims as affirmative defenses.

## IV. Conclusion

Accordingly, the court GRANTS Indian Harbor's motion to dismiss Rohrscheib's counterclaim for failure to state a claim. (ECF No. 17.)

SO ORDERED.

Dated: October 13, 2021

                                               s/Laurie J. Michelson
                                               LAURIE J. MICHELSON
                                               UNITED STATES DISTRICT JUDGE